IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DELANOUS E. GIRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-103 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Delanous E. Giron ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.  BACKGROUND

Plaintiff applied for DIB and SSI on June 11, 2010, alleging a disability onset date of November 24, 2009. Tr. ("R"), pp. 58-59, 114, 122. Plaintiff was thirty-seven years old at his alleged disability onset date and was forty years old at the time the ALJ issued the decision currently under consideration by the Court. R. 20, 30. Plaintiff completed high school, and prior

to his alleged disability had amassed a work history that included cashier, truck driver, construction worker, stocker, and delivery driver. R. 19, 53.

The Social Security Administration denied Plaintiff's applications initially, R. 62-69, and on reconsideration, R. 76-83. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"), R. 84, and the ALJ held a hearing on June 21, 2012. R. 26-57. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Roger Decker, a Vocational Expert ("VE"). Id. On August 9, 2012, the ALJ issued an unfavorable decision. R. 9-25.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since his alleged onset date of November 24, 2009. (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: diabetes mellitus with peripheral neuropathy; chronic pain disorder possible due to degenerative disc disease and carpal tunnel syndrome, with numbness in both hands; and stage 3 chronic kidney disease (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with limitations.[1] The claimant is limited to occasionally climbing ramps or stairs

---

[1] "Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasional lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

> and balancing, but cannot stoop, kneel, crouch, or crawl, and cannot climb ladders, ropes or scaffolds. In addition, he should avoid concentrated exposure to extreme cold, extreme heat, vibration, and all exposure to hazards such as dangerous machinery and unprotected heights. Furthermore, the claimant is limited to frequent handling, fingering, and frequent leg controls. Thus, the claimant is unable to perform any past relevant work. (20 C.F.R §§ 404.1565 and 416.965).
>
> 5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including final assembler, bench hand, and table worker. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from November 24, 2009, through August 9, 2012 (the date of the ALJ's decision). (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 14-20.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) made factual errors in describing Plaintiff's impairments that caused them to seem less severe, (2) failed to properly consider the consultative opinion of Achhinder K. Ohri, M.D., and (3) did not factor Plaintiff's need to use a cane into the decision to deny benefits. See doc. no. 12 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 13.

3

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Despite the ALJ's Factually Incorrect Designation of Plaintiff's Type I Diabetes as Type II Diabetes, the Conclusions Drawn by the ALJ about Plaintiff's Diabetes and Resultant Subjective Complaints Is Supported by Substantial Evidence.

Although Plaintiff correctly points out that the ALJ mistakenly referenced Plaintiff's diabetes mellitus as Type II, R. 16, Plaintiff offers nothing in the way of legal argument as to how the substance of the ALJ's analysis faltered in evaluating Plaintiff's symptoms and his subjective complaints about the complications stemming from his Type I diabetes. See Pl.'s Br., pp. 4-5. Indeed, all of the resultant complications cited by Plaintiff in his brief were specifically referenced by the ALJ in his opinion. The ALJ identified resultant diabetic neuropathy in Plaintiff's eyes, hypertension, and chronic kidney disease. R. 18 (citing Exs. 1F, 4F, 5F, 9F, and 10F). The exhibits cited by the ALJ in support refer to Type I diabetes, (see, e.g., Ex. 5F, R. 333), and encompass the records now cited by Plaintiff in his brief, (see,e.g., Ex. 10F, R. 443, 456). While it is clear the ALJ incorrectly stated Plaintiff had Type II diabetes, as discussed in more detail below, the ALJ accurately addressed Plaintiff's resultant complications, and Plaintiff has identified no record evidence to the contrary. The

5

incorrect reference to Type II diabetes is a harmless typographical error that does not form a basis for remand. See Majkut v. Commissioner of Soc. Sec., 394 F. App'x 660, 665 (11th Cir. 2010) ("[E]rroneous factual statements by the ALJ may constitute harmless error if the ALJ applies the proper legal standard." (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).)

To the extent Plaintiff argues the ALJ improperly evaluated Plaintiff's subjective complaints about the resultant complications of his diabetes, including incontinence, that also misses the mark. See Pl.'s Br., p. 5. The Eleventh Circuit has established a three-pronged test for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Id. When discrediting a claimant's subjective allegations, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial

evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).² The Eleventh Circuit does not require citation of particular phrases or formulations when making a credibility determination, but the reviewing court must be able to determine that the ALJ considered a claimant's medical condition as a whole. Dyer v. Barhnart, 395 F.3d 1206, 1210-11 (11th Cir. 2005).

Here, the ALJ acknowledged Plaintiff's medically determinable impairments could cause some of the symptoms identified by Plaintiff, but not at the level of intensity claimed or with limiting effects that would preclude him from performing sedentary work with the extensive list of limitations in the RFC identified by the ALJ. R. 16-18. The ALJ then conducted an extensive review of the record evidence and explained why the conditions documented in those records did not support the level of severity claimed by Plaintiff that would prevent him from performing sedentary work. For example, the ALJ specifically noted Plaintiff's visual problems but reviewed the treatment notes indicating corrected visual acuity of 20/70 on the right eye and 20/20 on the left, with no visual field contracture. R. 16 (citing Ex. 1F, R. 255). As to Plaintiff's kidney disease, the ALJ acknowledged the chronic condition. R. 16. However, the ALJ also recognized that on August 25, 2010, Plaintiff's kidney function appeared to be at his baseline, and despite being able to obtain necessary medication, Plaintiff was "extremely noncompliant" in taking his medicine. R. 17 (citing Ex. 8F, R. 414).

Plaintiff points to his incontinence as a resultant complication of his diabetes. Pl.'s Br., p. 5. Plaintiff testified that he sometimes suffers from incontinence, but there are no

---

²Under Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

details offered as to the frequency or severity of the problem. R. 34, 48. Plaintiff now offers no citation to record evidence in support of his claim of incontinence - for example that he sought treatment or medication for the condition - let alone any record evidence of physician-imposed limitations from such a condition. Nor does Plaintiff offer an explanation as to how any issues of incontinence would prevent him from performing sedentary work. As described above, the ALJ acknowledged and reviewed the records associated with Plaintiff's chronic kidney disease, but the ALJ properly concluded none of the resultant complications were severe enough to prevent Plaintiff from performing sedentary work.

Plaintiff's argument that the ALJ misstated Plaintiff did not have a TENS unit, thus indicating a lower level of pain than asserted by Plaintiff, also misses the mark. The ALJ stated Plaintiff had not, despite a twelve to thirteen year history of neck and lower back pain, sought a TENS unit "up to that time" of a July 14, 2011 treatment visit. R. 17. However, the ALJ went on to recognize on that day, Plaintiff was fitted with a TENS unit to better control pain and prevent muscle disuse atrophy. R. 17 (citing Ex. 22F, R. 652).

In sum, despite an incorrect factual designation of Plaintiff's Type I diabetes, the ALJ conducted a thorough analysis supported by substantial evidence of the impairment's limitations on Plaintiff's ability to work at the sedentary level, including thoroughly discussing and discrediting Plaintiff's subjective complaints. Not only did the ALJ review Plaintiff's medical records, but he contrasted Plaintiff's subjective complaints of severity with (1) Plaintiff's testimony about his daily activities, including bathing his children, shopping, and watching television; and (2) Plaintiff's conservative treatment that did not include extended hospital stays but did show stabilization with medication. R. 18, 43, 51, 185-86. Thus, Plaintiff's allegations of error related to factual misstatements by the ALJ

8

form no basis for remand.

### B. The ALJ Properly Addressed Dr. Ohri's Consultative Opinion.

#### 1. Weight Afforded to Opinions of Physicians.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford, 363 F.3d at 1160-61; Stone v. Commissioner of Soc. Sec., 544 F. App'x 839, 842 (11th Cir. 2013). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) and 416.927(c)(1)-(2), (5).

### 2. The ALJ Did Not Err in Attributing "Some Weight" to Dr. Ohri's Opinion.

Plaintiff argues the ALJ erred "in failing to consider the opinion of consultative evaluator, Dr. Achhinder Ohri in rendering his decision." Pl.'s Br., p. 6. At first glance, it appears as though Plaintiff is suggesting the ALJ completely failed to address Dr. Ohri's opinion. This is simply not the case, as the ALJ specifically addressed Dr. Ohri's findings from his August 25, 2011 examination of Plaintiff. R. 18 (citing Ex. 19F, R. 610-19). Plaintiff then narrows his argument to focus on the ALJ's alleged failure to address Dr. Ohri's opinion that Plaintiff "can carry out daily activities with difficulty and uses a cane as an assistive device." Pl.'s Br., p. 6. This argument is incorrect.

The ALJ specifically referenced Dr. Ohri's notation that Plaintiff had been using a cane for the last month and could handle his daily activities with difficulty. R. 18. However, the ALJ also stated he gave Dr. Ohri's findings and assessment "some weight," explaining that the "limited activities" opinion was "ambiguous at best." Id. Indeed, nothing in Dr. Ohri's report identifies any specific limitations. Ex. 19F, R. 610-19. Dr. Ohri graded Plaintiff's strength as 5/5 throughout his upper and lower extremities, R. 616, which, as the ALJ noted, is consistent with the other treatment notes in the record. R. 18 (citing Exs. 8F, 10F, and 20F). The ALJ also noted Dr. Ohri's generally benign findings concerning visual acuity, normal range of movement, normal grip strength, and ability to take care of personal hygiene. R. 18 (citing Ex. 19F). After reviewing these findings, and in light of the other treatment notes of record, the ALJ appropriately decided to afford "some weight" to Dr. Ohri's opinion. As Plaintiff does not point to any specific limitations in his daily activities that would prevent him from

10

performing sedentary work, the Court turns next to the contention that the ALJ did not appropriately consider Dr. Ohri's reference to using a cane as an assistive device.

As the ALJ acknowledged, Dr. Ohri noted in his report that Plaintiff had been using a cane for one month, following a vehicle accident approximately two months prior. R. 18, 610. Under the portion of the report asking for a description of gait and station, the examiner is asked to identify any assistive device that is required for ambulation and to give the medical basis for its use; the form also indicates the patient should be evaluated with and without the device and that any reason precluding testing without the device must be specified. R. 616. The only information recorded by Dr. Ohri during his one-time examination was, "[C]ane used as assistive device." Id. Dr. Ohri did not provide any indication that the cane was required for ambulation or state the medical basis for use of a cane.

To find that a hand-held assistive device, such as a cane, is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Moreover, "SSR 96-9p requires more than generalized evidence of a condition that might require a cane. It requires 'medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'" Staples v. Astrue, 329 F. App'x 189, 191 (10th Cir. 2009) (quoting SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription for a cane, or other indication that

the plaintiff requires an assistive device . . . . Since the plaintiff has not provided any [medical documentation establishing the need for a hand-held assistive device and describing circumstances in which device is needed], she has failed to show that the use of a cane is medically required.").

In support of his argument that using a cane is medically necessary, Plaintiff points to treatment notes showing that a cane was prescribed for him on July 14, 2011, R. 652, but the record does not contain the actual prescription or instructions for use. Treatment records show the cane was prescribed approximately one and a half months after a May 25, 2011 motorcycle accident in which Plaintiff ran his motorcycle off the road at 10:00 p.m. R. 544, 547. Following his complaints of continuing pain in his hip and a referral for pain management, doctors at MCG Health assessed Plaintiff's ambulation as "within normal limits, slow, but nonantalgic." R. 650, and his coordination and gait were "normal." R. 651. Nonetheless, to assist in ambulation and "to offset the weight bearing that he experiences over the right hip," the MCG doctors ordered a single point cane for Plaintiff. R. 652. Despite this order for a cane, and as pointed out by the ALJ, treatment notes also consistently showed normal musculoskeletal findings with normal strength and normal ambulation. R. 17 (citing Exs. 8F, 10F, 20F, R. 414, 443, 447, 465, 624). Indeed, on the day the cane was prescribed, Plaintiff gait was described as normal. R. 651.

The ALJ acknowledged Dr. Ohri's mention of use of a cane, but as described above, the ALJ also contrasted that statement with other treatment records indicating a normal strength and gait. R. 18. Moreover, there is no medical documentation, as required by the Social Security regulation described above, establishing and describing the circumstances under which the cane is a medical necessity. Additionally, Dr. Ohri performed his one-time

12

examination on August 25, 2011, little over one month after the cane had been prescribed on July 14, 2011 to offset weight bearing on Plaintiff's right hip, following Plaintiff's May 25, 2011 motorcycle accident. R. 610, 652. Plaintiff bears the burden of showing an inability to work for a consecutive twelve-month period. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1505(a) and 416.905(a). Even if Plaintiff had pointed to documentation in the record showing a medical necessity to use a cane for ambulation, to the extent Plaintiff relies on the use of a cane as the tipping point for disability benefits, he has not shown it was a medical necessity for a twelve-month period.

In addition, SSR 96-9p provides:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.

SSR 96-9p, 1996 WL 374185, at *7. Thus, even if Plaintiff had pointed to evidence that use of a cane was medically necessary for the requisite time period, which he has not, such evidence would not automatically disqualify him from consideration for sedentary work. As discussed in the next section, the ALJ presented hypothetical questions to the ALJ that accounted for all of Plaintiff's limitations supported by the substantial evidence of record, and thus properly relied on the information provided by the VE to determine there were sedentary jobs in the national economy that Plaintiff could perform.

### C. The ALJ Properly Relied on the VE's Testimony.

Plaintiff contends the ALJ erred in failing to factor Plaintiff's need to use a cane into the decision to deny benefits. Pl.'s Br., p. 5. More specifically, Plaintiff argues the ALJ erred

13

by failing to include the use of a cane when posing hypotheticals to the VE. Without explanation, Plaintiff contends "that the necessity to use a cane would significantly erode the occupational base and that by this factor alone, this claimant [is] *likely* . . . unable to sustain substantial gainful activity." Id. at 5-6 (emphasis added). As explained above in detail, Plaintiff has failed to establish under the Social Security regulations that using a cane was a medical necessity for the requisite twelve-month period. In any event, the answer the VE provided to the hypothetical upon which the ALJ relied to make his finding of "not disabled" was based on assumptions which accounted for Plaintiff's limitations supported by substantial evidence in the record.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161.

Here, Plaintiff faults the ALJ for not including use of a cane in the hypothetical presented to the VE. The ALJ did acknowledge and discuss that Plaintiff had used a cane for one month following a car accident in 2011, R. 17, but as discussed above, the record does not establish use of the cane was a medical necessity. Moreover, the ALJ included multiple qualifiers in his hypothetical to account for the credible limitations supported by substantial evidence:

14

> Assume a hypothetical individual of the claimant's age, education and past jobs you have described. Assume this individual is limited to sedentary work. This individual can occasionally climb ramps or stairs and bala[n]ce. He cannot stoop, kneel, crouch, crawl, climb ladders, ropes or scaffolds. In addition, the individual should avoid concentrated exposure to extreme cold, extreme heat, vibration. He should avoid all exposure to hazards such a[s] dangerous machinery and unprotected heights. This individual is limited to frequent handling and fingering, and frequent leg controls.

R. 54.

The VE then identified three, unskilled sedentary jobs and stated there would be no physical limitations required to perform sedentary work, as it only requires frequent use of handling and fingering, limitations identified by the ALJ in his RFC determination. R. 15, 54. When the ALJ added the condition that the hypothetical individual would be off task about fifteen percent of the workday, taking unscheduled breaks or missing two or more work days a month, then no jobs at any exertional level were available. R. 54-55. In making his final determination that there were jobs available Plaintiff could perform, the ALJ relied on the first hypothetical – the one which included all of the restrictions validly supported by the record – to determine that Plaintiff was not disabled.

Plaintiff's contention that the necessity to use a cane would significantly erode the occupational base is not supported by any factual detail. The Court will not hazard a guess as to how, specifically, Plaintiff believes this sweeping statement supports a finding of disability, let alone establishes that the limitations imposed in the RFC and presented to the VE do not comprehensively reflect Plaintiff's characteristics. As described above, the ALJ thoroughly discussed his reasons for discounting Plaintiff's subjective complaints, including his limited use of a cane, and presented an extensive list of limitations to the VE that were supported by substantial evidence. Moreover, Plaintiff points to nothing in the record that

validly supports a conclusion that he would be off-task fifteen percent of the workday, need to take unscheduled breaks, or miss two or more work days a month such that a finding could be made the ALJ erred in not relying on the VE's answer to the second hypothetical.

In sum, because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63. Therefore, the ALJ's conclusion that there is work Plaintiff can perform in the national economy is supported by substantial evidence, and this issue forms no basis for remand.

### D. Plaintiff's Letter, Filed Improperly After the Close of Briefing, Does Not Entitle Him to Remand.

After the briefing in this case closed, Plaintiff, who is represented by counsel, improperly submitted himself a two paragraph letter dated January 29, 2015, from a nurse practitioner explaining Plaintiff is enrolled in the Heart Failure Clinic of the Disease Management Program of University Hospital. (Doc. no. 14.) The nurse practitioner opines that "multiple serious medical conditions" prevent Plaintiff from engaging in any type of employment. (Id.) This letter was filed in the case even though permission had not been sought or granted for an untimely, *pro se* filing. For all of the reasons expressed by the Commissioner in her response to the filing, this additional evidence is not properly before the Court and forms no basis for a "sentence six" remand to consider new evidence. (See doc. no. 17.)

A reviewing court, when presented with new evidence that was never presented for review at the administrative level, may only consider whether the new evidence necessitates

remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence. Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007); Norton v. Commissioner of Soc. Sec., -F. App'x-, No. 14-12471, 2015 WL 1600426, at *4 (11th Cir. Apr. 10, 2015); see also Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (evidence attached to appellant's brief not properly before the court) (citing Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting general principle that court's review is limited to certified administrative record)); Walters v. Barnhart, 184 F. Supp.2d 1178, 1185 (M.D. Ala. 2001) ("The plaintiff submits to the Court medical records which she did not present to the ALJ or the Appeals Council in support of her disability claim. These records are not part of the administrative record for review by this court.").

Here, Plaintiff has never asked for a sentence six remand, and even if he were requesting such, he would have to show "good cause" for failing to produce the new evidence at the administrative level. See Ingram, 496 F.3d at 1267. Here, Plaintiff fails to provide any reason, much less "good cause," for his failure to produce the letter. Not only is the cursory letter not supported by any treatment records, but it is dated nearly two and one half years after the ALJ issued his opinion and after Plaintiff's last insured date of December 31, 2014. See R. 12, 20. Evidence of a Plaintiff's condition after the relevant time period that does not describe a claimant's condition during the relevant time period may be rejected as irrelevant. Hughes v. Commissioner of Soc. Sec. Admin., 486 F. App'x 11, 13-14 (11th Cir. 2012); Grantham v. Colvin, CV 312-046, 2013 WL 3804581, at *4 (S.D. Ga. July 18, 2013).

In sum, the letter is not properly before the Court and in any event, affords Plaintiff no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 12th day of May, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA